UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 13 |
| CHRISTOPHER C. DONIGIAN d/b/a | ) | Case No. 08-12455-MWV |
| Emcon Builders and | ) | |
| SANDRA C. DONIGIAN | ) | |
|     Debtor. | ) | |
| | ) | |
| LAWRENCE P. SUMSKI, | ) | |
|     Chapter 13 Trustee, | ) | Adv. Proc. No. 10-01098-LHK |
| v. | ) | |
| CHRISTOPHER DONIGIAN d/b/a | ) | |
| Emcon Builders, | ) | |
| JACOB DONIGIAN, and | ) | |
| DONIGIAN PROPERTIES, LLC a/k/a | ) | |
| Donigian Properties | ) | |
|     Defendants | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON COUNTS I, III AND V OF THE COMPLAINT**

Lawrence P. Sumski, as Chapter 13 Trustee, by and through his attorneys, Sheehan Phinney Bass + Green, P.A., respectfully submits, pursuant to Federal Rule of Civil Procedure 56, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, and LBR 7056-1, his memorandum of law in support of his motion for summary judgment.

### I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 1471.

2.    The United States District Court for the District of New Hampshire has

referred all cases under Title 11 to the Bankruptcy Judges for this district.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

4. This is a "core proceeding" pursuant to 28 U.S.C. §157(b)(2)(A), (E), (F), (H) and (O).

## II. STATEMENT OF UNDISPUTED FACTS

### A. Undisputed Facts Relating to Count I

5. Plaintiff, Lawrence P. Sumski, is the duly appointed Chapter 13 Trustee in the Chapter 13 Bankruptcy Case of Christopher Donigian d/b/a Emcon Builders and Sandra Donigian (the "Trustee"). *Trustee's Complaint, ¶ 5; Debtor's Answer, ¶5 and Jacob Donigian's Answer, ¶5.*

6. Christopher Donigian is an individual with an address of 200 Chester Road, Fremont, New Hampshire (the "Debtor"). *Trustee's Complaint, ¶ 6; Debtor's Answer, ¶6 and Jacob Donigian's Answer, ¶6.*

7. Between 2002 and 2007, the Debtor built residential homes under the trade-name Emcon Builders. *Deposition Transcript of Christopher Donigian, attached hereto as Exhibit A, p. 7-8, ll 13-23, 1-12 (hereinafter, "Debtor Deposition, Exhibit A, p. ___, ll ___").*

8. Jacob Donigian is the father of the Debtor and has an address of 134 Chester Road, Fremont, New Hampshire ("Donigian"). *Trustee's Complaint, ¶ 7; Debtor's Answer, ¶7 and Jacob Donigian's Answer, ¶7.*

9. Donigian Properties, LLC a/k/a Donigian Properties is a limited liability company formed under the laws of the state of New Hampshire and has a principal office at 134 Chester Road, Fremont, New Hampshire (the "LLC"). Donigian is the sole member of the LLC. *Trustee's Complaint, ¶ 9; Debtor's Answer, ¶ and Jacob Donigian's Answer, ¶9.*

2

10. Donigian has been a residential general contractor and developer since 1962. *Deposition Transcript of Jacob Donigian, attached hereto as Exhibit B, p. 4-5, ll 16-23, 11-13 (hereinafter, "Donigian Deposition, Exhibit B, p. __, ll __").*

11. Since 2000, neither the LLC nor Donigian have built any houses, but instead, have: a) sold, and continue to sell, lots of undeveloped land, either owned by the LLC or Donigian, to builders for residential development; and/or, b) provided residential construction loans to builders. *Donigian Deposition, Exhibit B, p. 5, ll 16-18.*

12. Since 2000, the LLC and/or Donigian have sold approximately forty (40) of their residential lots for development and have financed the builder's construction on a majority of those lots. *Donigian Deposition, Exhibit B, p. 16-17, ll 19-23, 1-7.*

13. When selling their lots, the LLC and/or Donigian take a deposit from the builder and execute an agreement with the builder, which, among other things, states that the remaining balance due for the lot is to be paid at the closing of the sale on the lot (and the constructed home) to the third-party buyer (the "Agreement"). *Donigian Deposition, Exhibit B, p. 9, ll 5-23.*

14. Neither the LLC nor Donigian, as the case may be, take a mortgage to secure the obligations under the Agreement but instead, retain title to the lot sold to the builder until about a week before the closing, at which time, the LLC and/or Donigian transfers the lot into the builder's name for the closing with the third-party buyer. *Donigian Deposition, Exhibit B, p. 9-10, ll 19-23, 1-10; p. 15, ll 3-12.*

15. Also, prior to the third-party buyer closing on a particular lot, the LLC and/or Donigian provides the builder with an invoice which includes, among other things, amounts due for the lot, any construction loan and/or interest. *Donigian Deposition, Exhibit B, p. 20-21, ll 22-23, 1-6.*

16. The builder then pays the LLC and/or Donigian at the closing of the sale of the lot to the third party buyer. *Donigian Deposition, Exhibit B, p. 12-13, ll 22-23, 1-2*.

17. Since 2000, the LLC and Donigian have also sold seven (7) of their lots of land to the Debtor for residential development (the "Seven Transactions"). *Donigian Deposition, Exhibit B, p. 24, ll 9-23*. Five (5) lots were located in Freemont, New Hampshire and the other two (2) lots were located in Allenstown, New Hampshire. *Donigian Deposition, Exhibit B, p. 24, ll 9-23*; <u>See also</u>, *Debtor's Deposition, Exhibit A, p. 12, ll 4-21*.

18. In the Seven Transactions, the LLC and Donigian also financed the Debtor's construction costs. *Donigian Deposition, Exhibit B, p. 29, ll 9-23;* <u>See also</u>, *Debtor's Deposition, Exhibit A, p. 12, ll 4-21*.

19. The Seven Transactions were very similar to the transactions that the LLC and Donigian had with other builders: a lot would be "sold"[1] to the Debtor; the LLC and Donigian would finance the Debtor's construction costs; the lot would be transferred to the Debtor shortly prior to the third party closing; the Debtor would be provided with some form of invoice by the Donigian for the lot price and construction costs; and, the LLC and Donigian would be paid at closing. *Debtor's Deposition, Exhibit A, p. 15-16, ll 5-12, 3-7;* <u>See Also</u>, *Donigian Deposition, Exhibit B, p. 23-24, ll 19-23, 1-8*.

20. There were certain differences however in the Seven Transactions because the Debtor was Donigian's son: The Debtor did not pay a deposit for the lot; there was no "Agreement"; and the son did not pay any interest on the construction loans. *Donigian Deposition, Exhibit B, p. 23-24, ll 19-23, 1-8; See Also, p. 25, ll 1-13*.

---

[1] Debtor did not buy the lot or even place a deposit. Donigian allowed Debtor to build on the lot.

21. In May or June 2007, the Debtor "purchased" lot 12, 39 Chestnut Drive, Allenstown, New Hampshire (the "Property") from the LLC for $95,000.00. *Donigian Deposition, Exhibit B, p. 53, ll 1-7*. This was the seventh and final transaction by and between Donigian, the LLC and the Debtor.

22. Between May, 2007 and September 2007, the Debtor borrowed $100,000 from the LLC and Donigian to construct a home on the Property (the "Construction Loan"). *Donigian Deposition, Exhibit B, p. 53, ll 4-7*.

23. On September 5, 2007, the sale of the Property was closed to a third-party buyer. *Donigian Deposition, Exhibit B, p. 48, ll 18-22*.

24. As of September 5, 2007, the Debtor owed Donigian and the LLC $208,000 for, among other things, the Property and the Construction Loan. *Debtor's Deposition, Exhibit A, p. 28, ll 18-23; See Also, Donigian Deposition, Exhibit B, p. 54, ll 5-9*.

25. On September 8, 2007 Donigian provided the Debtor with an invoice for amounts due on the Property totaling $208,000.00 (the "Invoice"). *A true and accurate copy of the Invoice is attached hereto as Exhibit C. Debtor's Deposition, Exhibit A, p. 27, ll 4-19; See Also, Donigian Deposition, Exhibit B, p. 48-49, ll 23, 1-23*.

26. On September 11, 2007, the Debtor made a partial payment on the Invoice of $100,000 (the "$100,000 Payment"). *A true and accurate copy of the check is attached hereto as Exhibit D. Donigian Deposition, Exhibit B, p. 55-56, ll 7-23, 1-11*.

27. On November 2, 2007, the Debtor made a second partial payment on the Invoice of $40,000.00 (the "$40,000 Payment", collectively with the $100,000 Payment, the "Payments"). *A true and accurate copy of the check is attached hereto as Exhibit E. Donigian Deposition, Exhibit B, p. 56-57, ll 12-23, 1-7*.

28. Donigian, who endorsed the checks, deposited the $100,000 Payment and the $40,000 Payment on September 17, 2007 and November 2, 2007, respectively, into his personal bank accounts. *Copies of Donigian's redacted Bank Statements are attached hereto as Exhibits F and G. Donigian Deposition, Exhibit B, p. 57-58, ll 14-23, 1-23; p. 59, ll 1-16.*

**B.     Undisputed Facts Related To Count III**

29. On May 15th, 2006, the Debtor gave Donigian a warranty deed purporting to transfer, to Donigian, real property located and known as Lot 16, Wes Lock Road, Barnstead, New Hampshire (the "Barnstead Property"). *A true and accurate copy of the deed is attached hereto as Exhibit H. Donigian Deposition, Exhibit B, p. 75, ll 1-23.*

30. The warranty deed for the Barnstead Property was not recorded until July 30, 2008 (the "Real Estate Transfer"). *See Exhibit H*.

31. The Debtor did not receive any consideration from Donigian for the Real Estate Transfer. *Trustee's Complaint, ¶ 22; See also, Debtor's Answer, ¶22 and Jacob Donigian's Answer, ¶22.*

### III.     LEGAL ARGUMENT

**A.     Legal Standard**

Summary judgment is appropriate when the record reveals "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". *Fed. R. Civ. P. 56(c)*.

**B.     Argument – Count I - Preference**

Pursuant to Section 547(b) of the Code, the Trustee may avoid any transfer of an interest of the debtor in property –

>    (1) to or for the benefit of a creditor;
>    (2) for or on account of an antecedent debt owed by the debtor before such

    transfer was made;
  (3) made while the debtor was insolvent;
  (4) made--
    (A) on or within 90 days before the date of the filing of the petition; or
    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and,
  (5) that enables such creditor to receive more than such creditor would receive if--
    (A) the case were a case under chapter 7;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent provided under title 11.

Because the Trustee can prove each and every element of 547(b) with respect to the $100,000 Payment and the $40,000 Payment, he is entitled to judgment as a matter of law.

  1.  Transfer of An Interest of Debtor In Property

Section 101 of the Code provides that a "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, disposing of or parting with property or with an interest in property. *11 U.S.C. 101(54)*.

The definition of transfer is, and is meant to be, as broad as possible and includes all direct and indirect transfers. *See* In re Compton, 831 F.2d 586 (1st Cir. 1987); In re Air Conditioning, Inc., 845 F.2d 293 (11th Cir. 1988).

For a transfer to be preferential, the transfer must be "of an interest of the debtor in property". *11 U.S.C. 547(b)*. The term "interest of the debtor in property" is not defined in the Code, so courts look to state law to determine whether the debtor possesses an interest in property. The main inquiry in determining whether an alleged preference involved an interest of the debtor in property is whether the property transferred would have been part of the bankruptcy estate had it not been transferred before the petition date. *See* Begier v. IRS, 496 U.S. 53 (1990); *See also*, In re Naponset River Paper Company, 231 B.R. 829 (1st B.A.P. 1999); Warsco v. Preferred Technical Group, 258 F.3d 557 (7th Cir. 2001). Essentially, the transfer must diminish

the fund to which other creditors can legally resort for payment. *In re Naponset River, 231 B.R. at 833*.

Under the foregoing standard, there can be no dispute that the $100,000 Payment and the $40,000 Payment, which were both made from the Debtor's bank account, i) would have been part of the bankruptcy estate had they not been made before the petition date, and ii) otherwise diminished the fund to which other creditors could have resorted to. Therefore, the Payments were transfers of interests of the Debtor's property.

### 2. To Or For The Benefit Of A Creditor

The transfer, to be preferential, must be made to or for the benefit of a creditor. *11 U.S.C. 547(b)(1)*. Section 101(10) of the Code defines a "creditor" as, among other things, an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor. Section 101(5) defines a "claim" as a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

The undisputed facts are that the LLC and Donigian were owed $208,000 by the Debtor as of September 5, 2007 for, among other things, the purchase price of the Property and for the Construction Loan. The Debtor knew that the Construction Loan and the purchase price for the Property were loans that needed to be repaid. *Debtor's Deposition, Exhibit A, p. 15, ll 7-12; p. 17-18 ll 23, 1-6*. The LLC and Donigian knew that the Construction Loan and the purchase price for the Property were loans and expected to be repaid. *Donigian Deposition, Exhibit B, p. 30-31, ll 18-23, 1-2*. Accordingly, the LLC and Donigian had a right to payment against the Debtor prior to the Petition Date and are therefore creditors of the Debtor. It is also undisputed that

$100,000 Payment and the $40,000 Payment were made to, and for the benefit of, the LLC and Donigian.

### 3. For Or On Account Of An Antecedent Debt Owed By The Debtor Before Such Transfer Was Made

For a transfer to be preferential, the transfer must be made for or on account of an antecedent debt owed by the debtor before such transfer was made. 11 U.S.C. 547(b)(2). A "debt" is a liability on a claim. *11 U.S.C. 101(12)*. While the term "antecedent debt" is not defined by the Code, a debt is antecedent if the debt is incurred before the transfer. *See Southmark Corp. v. Marley (In re Southmark Corp.), 62 F.3d 104 (5th Cir. 1995); Mendelsohn v. Louis Frey Co. (In re Moran), 188 B.R. 492 (Bankr. E.D. NY 1995); In re RDM Sports Group, Inc., 250 B.R. 805 (Bankr. N.D. Ga 2000)*. A debtor incurs a debt when he/she becomes legally obligated to pay it. *Southmark Corp., 62 F.3d at 106; Mendelson, 188 B.R. at 497; In re RDM Sports, 250 B.R. at 812*.

The testimony of both the Debtor and Donigian prove that the Construction Loan and Purchase Price were due upon the closing of the sale of the Property (September 5, 2007) and that an invoice was issued by Donigian and the LLC to the Debtor for $208,000 on September 8, 2007. The Payments were not made until September 11, 2007 and November 2, 2007 (and thereafter deposited by Donigian on September 17, 2007 and November 2, 2007), respectively. Indeed, the Payments were made on account of an antecedent debt.

### 4. Made While the Debtor was Insolvent

The transfer, to be a preference, must be made while the debtor was insolvent. Section 101(32) of the Code defines "insolvent" as a financial condition such that the sum of one's debts is greater than all of one's property, at fair valuation, exclusive of exempt property. A "rough

9

balance sheet" test determines insolvency; the debtor is insolvent when its liabilities exceed the fair value of its nonexempt assets. See *Miranda v. Madelux International, Inc. (In re VJ International, Inc.)*, 359 B.R. 401 (Bankr. D.P.R. 2006); See also, *Sumski v. Hawkins, (In re Pysz)*, 2008 WL 2001753 (Bankr. D.N.H. 2008).

By looking at the Debtor's Statement of Financial Affairs, Schedules and the allowed claims in the Debtor's chapter 13 case, it is clear that the Debtor was insolvent at the time of the Payments.

On the Debtor's Amended Summary of Schedules (Court Doc. No. 70), the Debtor lists $347,125.55 in assets as of the Petition Date. Assuming arguendo, that the value of the Debtor's assets should be increased by the value of the Debtor's assets sold or otherwise transferred during the two years prior to the Petition Date[2], the Debtor's total assets equal $368,125.55. After deducting approximately $24,603.55 in exempt property[3], the Debtor is left with $343,522.00 in assets.

On the other side of the ledger, the Debtor lists over $716,258.11 in total liabilities. See *Debtor's Amended Summary of Schedules, Court Doc. No. 70*. Assuming arguendo that some of this debt was incurred after November 2007, there is no disputing that as of September 2007, the Debtor owed:

      a. Donigian and the LLC $208,000;
      b. Nationstar Mortgage at least $432,311.00;
      c. Jackson Lumber & Mill Work $9,000.00, See *Allowed Claim 47*;
      d. Granite State Concrete $4200, See *Allowed Claim 45*;
      e. CNH Capital at least $8800, See *Allowed Claim 5;* and,

---

[2] The Debtor sold $21,000 worth of assets during the two years prior to the Petition Date as disclosed on Debtor's Amended Statement of Financial Affairs, Question 10 (Court Doc. No. 70).
[3] On Schedule C of the Debtors Schedules, Court Doc. No. 1, the Debtor exempts $24,603.55

    f. $28,000 to various members of Sandra Donigian's (the co-debtor) family, *See, Amended Statement of Financial Affairs, Court Doc. 70, Question 3c,*

for a total of $686,111.00.

  Accordingly, the Debtor was insolvent at the time he made the $100,000 Payment and the $40,000 Payment.

  5. <u>Made Within One Year Before The Date Of The Filing Of The Petition, If Such Creditor At The Time Of Such Transfer Was An Insider</u>

  Pursuant to Section 547(b)(4), a trustee may avoid a transfer made between ninety days and one year of the filing of the petition if the creditor was an insider at the time of such transfer. Section 101(31) defines an insider, when the debtor is an individual, as, among other things, a relative of the debtor. Donigian is the father of the Debtor. The testimony and exhibits clearly prove that 1) the Payments were made within one year of the Petition Date[4]; and, 2) that Donigian, the insider, received the Payments and deposited the Payments into his personal account.

  While the Property was transferred to the Debtor by the LLC and the Construction Loan funds were paid to the Debtor by an LLC Check, the LLC and Donigian were one in the same with respect to the Seven Transactions and in particular, the transaction involving the Property. As Donigian has admitted in his Answer (Court Doc. 9), the funds advanced for the Debtor's construction costs came from Donigian's personal Money Market account. *Donigian's Answer, ¶¶ 11, 14 and 15*. The LLC was simply used as a conduit. Additionally, Donigian has admitted in his Answer that "[i]t was agreed between Jacob Donigian and the Debtor that after the sale [of the Property], the *amounts advanced by Jacob Donigian* for the construction of the home *would be returned to him.* (emphasis added) *Donigian's Answer, ¶¶ 11*. Furthermore, the Debtor never

---

[4] The Petition Date was August 28, 2008. The $100,000 Payment was made on September 11, 2007 and the $40,000 Payment was made on November 2, 2007.

signed an "Agreement", never provided a deposit or paid interest on the construction loans, unlike the forty (40) transactions that Donigian and the LLC had with other non-related builders. Donigian is the only member of the LLC and the LLC has the same address as does Donigian. The fact that the LLC and Donigian are one in the same is further underscored by the fact that Donigian endorsed the Payments and deposited them into his personal accounts.

      6.      Greater Distribution

The transfer, to be a preference, must enable the creditor to receive more than such creditor would receive if (a) the case were a case under Chapter 7; (b) the transfer had not been made; and (c) such creditor received payment of such debt to the extent provided by the provisions of title 11.

The Debtor filed an Amended Chapter 13 Plan Dated October 8, 2009, which was confirmed on November 20, 2009. Under the Plan, the unsecured creditors are receiving .01% and the Debtor's Liquidation Analysis within the Plan states that if the case were converted to a chapter 7, unsecured creditors would receive 0%. Donigian and the LLC were unsecured creditors of the Debtor, therefore if the Payments had not been made, Donigian and the LLC would have received nothing, instead of the $140,000 that they did receive.

**C.      Argument – Count III – The Fraudulent Transfer of Real Estate**

Pursuant to Section 548 of the Code, a Trustee may avoid any transfer of an interest of the debtor in property made within two years before the date of the filing of the petition if the debtor received less than a reasonably equivalent value in exchange for such transfer and the transfer was made at a time when the Debtor was insolvent. *11 U.S.C. §548(a)(1)(B)(i) and (ii)(I)*.

The Debtor transferred the Wes Lock Property on July 30, 2008.  *See Schatz v. Imperial Capital Bank, (In re Schatz), 402 B.R. 482 (Bankr. D.N.H. 2009); See Also, CF Realty Trust v. Town of Hampstead (In re CF Realty Trust), 160 B.R. 461 (Bankr. D.N.H. 1993)*.  The Transfer took place a mere twenty-nine (29) days prior to the Debtor filing his bankruptcy petition and almost incredibly, took place on the same day that the Debtor received his credit counseling, a prerequisite to filing his chapter 7 petition.  The Debtor never received any consideration from Donigian for the Wes Lock Property.  Furthermore, as of the Petition Date, the Debtor listed $347,125.55 in assets and 716,258.11 in total liabilities.  Therefore, the Debtor was insolvent at the time of the Real Estate Transfer.

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee on Counts I, III and V of the Trustee's Complaint.

                Respectfully Submitted,

                LAWRENCE P. SUMSKI, CHAPTER 13 TRUSTEE
                By His attorneys,

                SHEEHAN PHINNEY BASS + GREEN

Date: April 8, 2010        By:/s/  James S. LaMontagne
                   James S. LaMontagne, Esq., BNH 05483
                   1000 Elm Street, P.O. Box 3701
                   Manchester, NH 03105-3701
                   (603) 627-8102